Mary Louise **DUPREE**, Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. No. 464.

United States District Court,
M. D. Georgia, Columbus Division.

Oct. 7, 1954.

Vincent P. McCauley, Columbus, Ga., for plaintiff.

Frank O. Evans, U. S. Atty., Jos. H. Davis, Asst. U. S. Atty., Macon, Ga., for defendant.

DAVIS, Chief Judge.

This is a suit on National Service Life Insurance policies. The action was brought by Mary Louise Dupree, the widow of Thomas Dupree, who died on June 8, 1952 while on active duty in the military service. The case was tried before the Court without a jury. The facts of the case appear in a stipulation by the parties and the Veterans Administration file, which was offered in evidence on the hearing.

While in active military service Thomas Dupree was issued a National Service Life Insurance policy in the amount of $1,000. The policy (No. N 533 738) was effective August 1, 1941 and named his mother, Lissie Dupree, as principal beneficiary and a sister, Sarah Dupree, as contingent beneficiary. This policy was renewed effective August 1, 1949 under certificate No. V 14 059 821.

While in the active military service Thomas Dupree was also issued a policy for $9,000. This policy (No. N 13 285

640) was effective August 1, 1943 and named the same beneficiaries as his other policy.

On January 10, 1951, while both of these policies were in effect, Thomas Dupree married Mary Louise Dupree. He requested that the beneficiary named in these two policies be changed on April 10, 1951, designating his wife as the new beneficiary. The change of beneficiary was made a matter of record on June 1, 1951.

The $9,000 policy was renewed, effective August 1, 1951 under Certificate No. V 165 59338.

In his letter of April 10, 1951, in which he requested a change of beneficiary, Dupree inquired of the Veterans Administration when he could get something out of his insurance. By letter of June 12, 1951 he was informed that term insurance had no guaranteed value upon lapse or surrender and he was sent a folder describing permanent insurance plans, such as endowment policies.

The letter of April 10 and all others written by Dupree show him to be illiterate and completely lacking in any understanding of insurance rules and regulations.

Dupree again wrote the Veterans Administration on July 21, 1951. The meaning of this letter is far from clear, but it restates the insured's desire to borrow money.

On September 26, 1951, Dupree executed a formal application on Veterans Administration form 9–350–a for a $10,000 20-year endowment policy. On his application he stated that he had two other National Service Life Insurance policies, listing them by number, and said nothing about converting or cancelling them. In the application he stated that he had authorized the deduction of premiums on the new policy from his monthly pay at the rate of $13.54, commencing in December, 1951. On the application he listed as beneficiaries of the 20-year endowment policy his sister, Rosa Dupree, as principal beneficiary,

and his wife, Mary Louise Dupree, as contingent beneficiary.

At the time of this application Dupree was stationed in Germany and his wife and two children were living there with him.

On October 31, 1951 the Veterans Administration again wrote Dupree that his two policies (Nos. V 14,059,821 and N 13,285,640) "have no cash value in their present status."

In a letter of November 3, 1951, Dupree wrote the Veterans Administration wanting to borrow some money to buy a home. He said his mother and daddy were not able to help theirselves, nor could his sister take care of them. In that letter he also said: "My National Service Life Insurance has been made to a 20 year policy."

On November 20, 1951, Dupree again wrote the Veterans Administration concerning his two term policies, referring to them by number. In that letter he stated that he now had a 20-year endowment policy. He then referred to his two term policies and said he would like to change them to policies having a cash value "and not like they are".

On December 14, 1951, some one in the Veterans Administration endorsed on the margin of Dupree's application for the endowment policy "Accept as appl. for conversion".

There was no further correspondence for several months.

On May 20, 1952, Dupree's application for the 20-year endowment policy was medically approved, and on May 27, 1952 the Veterans Administration addressed a letter to Dupree informing him of the acceptance of his application. The letter stated that his application "has been accepted as an application for conversion of your $1,000 and $9,000 term policies and a permanent plan of insurance has been established as indicated above", and that arrangements would be made to charge an increased premium of $35.40 to be made retroactive to August 1, 1951; that amount being the proper premium for such a policy.

There is no evidence to indicate that Dupree ever received the Veterans Administration's letter of May 27, 1952.

In early June, 1952, Thomas Dupree entered the hospital at Wurzburg, Germany, and on June 8, 1952 he died of coronary thrombosis. At the time of his death, his wife, Mary Louise Dupree, and their children were living in Germany with the insured.

Department of the Army form FC USA 13–55 was executed June 12, 1952, showing that a deduction for insurance premium in the amount of $13.54 was made through May 31, 1952, and that premiums to June 8, 1952 would be adjusted from Dupree's final pay. On August 19, 1952 payments of $35.40 per month as premiums on the endowment policy were made retroactive to August 1, 1951 by adjustment between the Department of the Army and the Veterans Administration.

On July 2, 1952, Mary Louise Dupree, plaintiff herein, filed her claim for the proceeds of the two term policies on the life of her husband.

On September 9, 1952 the Veterans Administration notified the insured's sister, Rosa, that she had been named beneficiary in a $10,000 policy on the life of Thomas Dupree. On September 11, 1952 Rosa Dupree filed her claim for the proceeds of said policy and selected options 1 and 4 as the mode of settlement. Under this settlement plan she was to receive $3,000 in one sum and the remaining $7,000 upon the basis of refund life income in monthly installments.

The Director, Dependents and Beneficiaries, Claim Service of the Veterans Administration notified Mary Louise Dupree by letter of September 24, 1952 that her claim had been denied, since Rosa Dupree was shown by the records to have been the last designated principal beneficiary.

On September 30, 1952, Mary Louise Dupree, the plaintiff here, notified the Veterans Administration of her claim based upon the change of beneficiary, and renewed her claim for the proceeds of the policies. By letter of October 24, 1952 she was notified to submit proof of her claim within 30 days.

On October 30, 1952 the attorney for the plaintiff advised the Veterans Administration of the probability that the plaintiff would seek to enforce her claim by court action. The Veterans Administration replied by letter of December 16, 1952, requesting plaintiff to submit proof of her claim within 30 days. On January 9, 1953, plaintiff's attorney advised the Veterans Administration that he was without proof and that suit would be filed. On February 2, 1953, the Veterans Administration wrote and requested to be advised promptly if Mrs. Dupree had decided against instituting legal action.

On June 8, 1953, the Veterans Administration advised Rosa Dupree by letter that her claim had been allowed and that she was to receive $3,000 in one sum, with $27.93 monthly commencing June 8, 1952, to continue for life, with 251 installments certain. Said letter further advised that the initial payment would include all installments then due. In accordance with this action, Rosa Dupree was paid $3,391.02.

Just four days later, no additional correspondence having passed between the plaintiff and the Veterans Administration, Mary Louise Dupree filed this suit. As a result of this litigation, the Veterans Administration notified Rosa Dupree of the suspension of payment on July 17, 1953.

The defendant by its pleadings denies the right of the plaintiff to recover and, in the alternative, seeks to limit her recovery, if any, to $10,000 less the amount previously paid to Rosa Dupree.

The plaintiff made a motion to strike that portion of defendant's answer and that motion was heard in conjunction with the trial of the case. While the motion appears to be good, the Court prefers to dispose of the question on the merits rather than on the motion to strike.

For a proper determination of this case, the Court must first determine which policy or policies were in force at the time of the death of the insured. In referring to the policies, I shall refer to the $1,000 and $9,000 policies as the "term policies" and the $10,000 policy last applied for as the "endowment policy".

It is obvious that if the term policies were in effect the plaintiff herein is entitled to recover.

■ I find no merit in the contention that the application for the endowment policy operated as a change of beneficiary, even if it were not a valid conversion. The naming of a different beneficiary in an application for a new policy can have no effect on the beneficiary of a policy already in force. Particularly is this true where, as here, there is no evidence indicating that the insured knew he could not retain his old policies and acquire a new one. It is clear that Thomas Dupree felt that he had amply provided for his wife and children and simply wanted additional protection for his aged mother and father. There is no evidence of any change of feeling for his wife. Instead, she was named contingent beneficiary in the application for the endowment policy.

I find as a fact that Thomas Dupree never intended to change the beneficiary of his term policies and took no steps directed toward that end. While it is comparatively easy for a serviceman to change his beneficiary, there must be some evidence of an intention to do so. After considering all the facts, including the illiteracy of the insured, I find no such intent. Thus, if the term policies remained in effect, the plaintiff is entitled to a recovery.

It is admitted here that the term policies were in full force and effect prior to September 26, 1951. Has anything happened since that time to cancel these policies? I think not.

■ There is no evidence of any express rescission or request for cancellation or conversion. It has not been made to appear that the insured knew he could not have more than $10,000 in National Service Life Insurance. There is a "fine print" provision on page 4 of the application, which states this maximum limitation but there is no evidence that this was explained to the insured. Nowhere on the application is there a request for conversion. The endorsement on the application by the Veterans Administration, dated December 14, 1951, reflects the fact that the decision to treat this application for insurance as an application for conversion was a unilateral administrative decision made without the knowledge or consent of the insured. There is nothing to indicate that Dupree would have agreed to this, had he known of it. A rescission is in itself a contract, unless it results by operation of law, and depends upon a mutual understanding and agreement, which was not present here.

■ The letter of November 20, 1951, in which Dupree states a desire to change his term policies to policies having a cash value "and not like they are", satisfies me that Dupree thought he had merely acquired a third policy of insurance by his application of September 26, 1951, and did not intend for that application to affect his term policies. I, therefore, find that there had been no express or implied consent to the cancellation of his term policies.

■ The defendant vigorously contends that the term policies were automatically cancelled when the endowment policy became effective. I consider this contention likewise without merit. In view of the statutory limit on the amount of insurance one person can obtain, all three policies could not be effective but Dupree would have been the proper man to decide which policy or policies to retain, after being fully advised of the situation. This, however, is immaterial here, since this Court is of the opinion that the endowment policy never became effective and could not, therefore, automatically terminate the term policies.

On September 26, 1951, Dupree made an offer to the Veterans Administration.

He offered to buy a $10,000 20-year endowment policy on his life at a premium rate of $13.54 per month. Months later, on May 27, 1952, the Veterans Administration sought to accept that offer but on different conditions. First, they sought to accept his offer for new insurance as an application to convert. Second, they sought to accept his offer at a monthly premium rate of $35.40. They communicated these facts to him by a letter, which he may or may not have received. Clearly, he took no action on their communication. The premium adjustment was unilateral and without Dupree's consent.

■ It is basic contracts' law that an acceptance of an offer on material terms other than those contained in the offer and at variance with them is ineffective as an acceptance but constitutes a rejection, or at best a counter offer, which must then be accepted before ripening into a contract. Iselin v. United States, 1926, 271 U.S. 136, 139, 46 S.Ct. 458, 70 L.Ed. 872. Here there was no acceptance of the counter offer. One cannot simply conclude that Dupree, whose letters reflect his financial worries, would have agreed to pay $35.40 monthly for a policy which he thought he could obtain for $13.54. That is a material variance and could not bind Dupree until accepted by him. For this reason the endowment policy never became effective and, even if Dupree's application had been one for conversion, the term policies would remain effective until the endowment policy became effective.

■ The defendant's argument that recovery on the policy should be reduced by the amount previously paid to Rosa Dupree, I do not think, can be sustained. The plaintiff herein has, from a time shortly after the death of her husband to date, strongly urged her right to the proceeds of the policies. The payments made to Rosa Dupree were made with full knowledge of the plaintiff's claim and the probability of court action to enforce it. This is another example of mistaken administrative action, with which this case has been marked. The unilateral designation of Dupree's application as one for conversion, the readjustment and collection of premiums to which he had not agreed after his death, and the payment to one claimant in the face of threatened litigation by another seem to be errors chargeable to some one in the Veterans Administration.

The plaintiff in this action first filed a claim for the proceeds of her husband's insurance on July 2, 1952. From that date she continued to press her claim. The correspondence in evidence contains nothing which could be considered as a waiver or could estop her from seeking full recovery. On January 9, 1953, plaintiff's counsel notified the Veterans Administration that as soon as a final denial of her claim was made, "we will file the necessary proceedings in the United States Court here." In view of that letter, the Veterans Administration notified Rosa Dupree on February 2, 1953 that action on her claim would have to be deferred "until the litigation has been completed". On that same day the Veterans Administration wrote plaintiff's counsel, "If * * * Mrs. Dupree should decide *against* instituting legal action, it will be appreciated if the Veterans Administration may be so advised."

Without further correspondence with the plaintiff or her counsel, the Veterans Administration on June 8, 1953 paid Rosa Dupree $3,391.02. Clearly, the Veterans Administration should have adhered to the decision which they communicated to Rosa Dupree on February 2, 1953. The plaintiff has in no way been responsible for the payment to Rosa Dupree.

■ The defendant contends that the plaintiff delayed filing her suit for an unreasonable time and thus estopped herself from claiming that to which she is entitled. That claim does not merit discussion. The file discloses the effort and time expended by counsel for the plaintiff in obtaining information essential to his case. Suit was filed on June 12, 1953. Surely that is not an unreasonable delay. The Veterans Adminis-

tration erred and they should not now be allowed to penalize the plaintiff for their error in judgment. There is no evidence which could support a claim by the defendant for a set-off.

The plaintiff herein is entitled to recover the proceeds of the two policies in which she was named as beneficiary, to wit, $10,000.

Let counsel for the plaintiff present a judgment in accordance with the foregoing findings of fact and conclusions of law.